## Stern Enterprises, Inc., Appellant, *v*. Penn State Mutual Insurance Co.

Argued November 16, 1972. Before WRIGHT, P. J., JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ. (WATKINS, J., absent.)

*David F. Alpern,* with him *Alpern and Alpern,* for appellant.

*John E. Evans, Jr.,* with him *Evans, Ivory & Evans,* for appellees.

OPINION PER CURIAM, March 27, 1973:

Plaintiff had contracted for a one-night (September 28, 1970) closed circuit showing in Pittsburgh of a live New York performance of "Oh, Calcutta", and had procured from defendant insurance company a policy of insurance against breakdown of the broadcasting equipment or loss of signal. There was an equipment breakdown and as a result the receipts from the sold tickets had to be refunded to the purchasers. Defendant

insurance company reimbursed plaintiff for the amount of the refunds evidenced by tickets which had been signed on the back by the customers with their names and addresses. The company, however, refused to reimburse plaintiff for any tickets not so signed, it relying on the following provision of the policy: "In the event of a loss, the amount of the claim will be determined solely by the amount of tickets returned for refund. The customer must sign his name and address on the back of the ticket when returning it for refund. The exhibitor must retain all tickets refunded for inspection by the insurer." Plaintiff sued in assumpsit, and after a non-jury trial the trial judge held in favor of the defendant as to the unsigned tickets and plaintiff has appealed.

It is plaintiff's contention that the inferences and conclusions drawn by the Trial Court were incorrect in that (1) the insurance policy was ambiguous and should not have been interpreted as limiting recovery only as to tickets bearing customers' signatures and addresses; (2) the insurance policy was a contract of adhesion; and (3) plaintiff was relieved of the duty of securing the customers' signatures on the tickets because of the "mob and group violence which threatened on this particular occasion."

We have carefully studied the record and it is our conclusion that the insurance policy was properly determined by the court below not to be a contract of adhesion, the evidence not revealing any great disparity of bargaining power between the parties thereto.

The contract was, therefore, properly interpreted according to its clear and unambiguous meaning with the result that the insured can collect only for those tickets signed by the customers.

Plaintiff seeks to rely on the statement "In the event of a loss, the amount of the claim will be determined *solely* by the amount of tickets returned for re-

fund", plaintiff emphasizing the word "solely". However, this word can only be held to have reference to limiting the amount to be paid on each of the returned, properly signed, tickets, so that no claim would be made thereon for any loss or damage other than the purchase price. To construe the word "solely" as meaning there were no restrictions as to the tickets on which the purchase price would be paid by the insured would render meaningless and null and void the statements immediately following which require that "the customer must sign his name and address on the back of the ticket when returning it for refund. The Exhibitor must retain all tickets refunded for inspection by the Insurer." This language can only be interpreted to mean that to prevent payment of tickets which had in fact not been sold by the insured, the insurer was requiring that insured secure and retain the customers' signatures and addresses on the back of each refunded ticket.

The lower court properly held plaintiff was not excused from fulfillment of that requirement by reason of the unruliness of the customers and their refusal to place their names and addresses on the tickets returned for refund. Such conditions were foreseeable and should have been provided for in the policy (*Luria Engineering Co. v. Aetna Casualty & Surety Co.*, 206 Pa. Superior Ct. 333 (1965)).

Judgment affirmed.